**ROSE HALL, LTD., Plaintiff,**

v.

**CHASE MANHATTAN OVERSEAS BANKING CORPORATION and Holiday Inns, Inc., Defendants.**

**Civ. A. No. 79–182.**

United States District Court,
D. Delaware.

March 26, 1982.

---

11. As indicated in this opinion, like considerations would apply were the *DeRocco* deposition offered as well.

James M. Tunnell, Jr., and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Charles S. Crompton, Jr., and David B. Brown, of Potter, Anderson & Corroon, Wilmington, Del., for Chase Manhattan Overseas Banking Corp.; Milbank, Tweed, Hadley & McCloy, of New York City, of counsel.

Henry N. Herndon, Jr., of Morris, James, Hitchens & William, Wilmington, Del., for defendant Holiday Inns, Inc.; Ronald L. Reid, and Peter Q. Bassett, of Alston, Miller & Gaines, Atlanta, Ga., of counsel.

*Opinion on Rose Hall's Motion to Amend the Amended Complaint*

STEEL, Senior District Judge.

On January 11, 1982, plaintiff moved to amend the amended complaint by including new Counts V and VI. Defendants objected. The original complaint was filed on April 11, 1979 and was amended on July 1, 1980. On October 9, 1981, plaintiff moved unsuccessfully to have a trial date fixed. On November 6, 1981, the Court fixed March 31, 1982, as a cut off date for discovery.

The proposed amendments fall into four areas: (1) Count V, paragraph 51 and the first sentence of paragraph 53, (2) Count V, paragraph 52, (3) all of paragraph 53 except the first sentence, and (4) Count VI.

*Count V, ¶ 51 and First Sentence of ¶ 53*

■ With one exception[1] paragraph 51 deals exclusively with the controversy between plaintiff and Holiday Inns with respect to the lease between them. It alleges that Holiday Inns maliciously and falsely told Chase that Holiday Inns was not bound by the terms of the lease, that it threatened not to perform its obligations under the lease, and to file suit on a claim under the lease to recover $4,000,000 from plaintiff. All of the allegations of paragraph 51 were made in the context of the conspiracy charge.

Paragraph 51 amounts to nothing more than pleading evidence relating to the conspiracy theory. The substance of paragraph 51 has been pleaded in paragraph 17 ever since the initial complaint was filed in

support of the claim of plaintiff that the actions of defendants brought about a frustration of the arrangement between plaintiff and the Jamaican government for the latter to purchase the Hotel Asset. The Court has held this claim to be barred by the Georgia judgment.

The facts alleged in paragraphs 17 and 20 were incorporated and realleged by virtue of paragraph 38 in Count III of the amended complaint filed on July 1, 1980, to support the conspiracy charge.

Holiday Inns concedes that it has diligently pursued all avenues of discovery on the question of conspiracy (Doc. 271, p. 18). There appears to be no reason, therefore, why the amended complaint should not be further amended to include paragraph 51 and the first sentence of paragraph 53.

In this respect the motion to amend will be granted.

*Count V, ¶ 52*

■ Paragraph 52 alleges that in September 1976, the Jamaican government accepted Chase's proposal of September 14, 1976, described in paragraphs 24–25, to purchase the Hotel Asset[2] plus 3,000 acres of real estate for a grossly inadequate price. The context of paragraph 52 disclosed that sale was for the real estate plus the stock of Rose Hall (H.I.).

Paragraph 52 alleges further that in December 1976, the Jamaican government expressed a desire to modify the earlier transaction and purchase for the same price the 3,000 acres of land and the hotel itself and small tract of land on which it stood which were owned by Rose Hall (H.I.) instead of buying the shares of Rose Hall (H.I.). Paragraph 52 alleges that Chase rejected the Jamaican government's proposal of December 1976, under which, if accepted, Chase would have retained for plaintiff's

---

1. The only exception is the allegation that Holiday Inns falsely charged plaintiff with misrepresentation with respect to the transactions described in paragraphs 13–15, the arrangement Rose Hall had to sell the Hotel Asset to the Jamaican government which was terminated in August 1976.

2. Paragraph 7 provides:

"Sometimes hereinafter the term 'Hotel Asset' will be used to refer either to Rose Hall (H.I.), Ltd. or to the Hotel or to both without differentiation."

benefit and would have returned to plaintiff the Rose Hall (H.I.), Ltd. corporate entity which contained assets which plaintiff claims were of value to it. Paragraph 52 alleges, finally that when Chase rejected the Jamaican government's proposal of December 1976, it threw away assets of value to plaintiff in deliberate and reckless disregard of its obligations to plaintiff in order to advance the purposes of the conspiracy.

The defendants have known from the time when the original and first amendment of the complaint were filed that they were faced with a charge that they had conspired to sell the stock of Rose Hall (H.I.) plus the land to the Jamaican government for an inadequate price. *See* paragraph 39. Neither the original nor first amended complaint, however, contained any allegation which referred to the December 1976 rejection by Chase of the Jamaican government's desire to buy the hotel instead of the stock of Rose Hall (H.I.). To the extent that they failed to do so, paragraph 52 pleads new evidence to support the conspiracy as it relates to the sale of the stock of Rose Hall (H.I.).

Chase objects to the paragraph 52 amendment, arguing that plaintiff has known of the facts for a substantial period of time but has inexcusably delayed making them known to Chase with the resultant prejudice to Chase in preparing its defense. This is rebutted by the record.

Paragraph 39 of Count III of the amended complaint alleged a conspiracy by defendants with particular reference to the sale by Chase to the Jamaican government of the stock of Rose Hall (H.I.). Although refusal by Chase in December 1976 to change the deal with the Jamaican government from one to sell stock of Rose Hall (H.I.) to one to sell the hotel is not alleged in either the original or amended complaint, the manner in which plaintiff conducted the examination of Brown when his deposition was taken in January 1981, should have made clear to Chase the significance which plaintiff intended to place upon the government's desire to change the deal in December 1976, and Chase's rejection. *See* Brown

Dep. pp. 741–42. Plaintiff's intention of relying upon Chase's rejection of the government's desire in December 1976, was reaffirmed when on June 25, 1981, it filed Rose Hall's first set of requests for admission by Chase. (Doc. 154). The admission sought in pages 11–12 obviously were aimed at establishing Chase's liability for Chase's refusal to allow the Jamaican government to purchase the hotel rather than the shares of Rose Hall (H.I.). Chase's response on September 30, 1981, made no objection to plaintiff's request for admission on the ground that they were outside the scope of the pleadings. (Doc. 178). In fact, one of Chase's responses to Rose Hall's request was (p. 16):

"(f) On or about December 21, 1976, the Jamaican government proposed to Chase Jamaica that instead of purchasing the 812,084 shares in Rose Hall (H.I.), it would prefer to purchase the Hotel (Giberga Dep. Ex. 4, Brown Dep. Ex. 53, 55). With respect to this proposal.

(i) It was Chase Jamaica's understanding, and it was the fact, that the Jamaican government proposed to purchase the Hotel on terms which would have produced, for the repayment of Chase Jamaica's loan, the same amount as its purchase of the Rose Hall (H.I.) shares would have produced.

Admitted, except that CMOBC *refers to Brown Deposition Exhibit 53 for an accurate statement of the Urban Development Corporation's proposal.*"

Chase disavowed any knowledge of the claim as it is alleged in paragraph 52 prior to plaintiff's motion to amend. The record supports the conclusion that it knew or at least should have known that the claim would be asserted as alleged in paragraph 52 in view of paragraph 39 in Count III of the first amended complaint and the manner in which plaintiff carried on its discovery. Whatever opportunities Chase passed up during prior discovery, either to examine witnesses deposed, to depose new witnesses, or otherwise prepare its defense, were of its own doing.

The motion of plaintiff to amend paragraph 52 will be granted.

### Count V, All of ¶ 53 Except First Sentence

■ This amendment is based upon precisely the same facts as are alleged in paragraph 51 to support the conspiracy claim. The purpose of the allegations in paragraph 53 is not the same; rather it is alleged to support an alternative theory—a non-conspiratorial theory of liability, constituting as plaintiff alleges torts independent of the conspiracy which, if proven, give rise to individual liability on the part of Holiday Inns.

A proper consideration of the disposition to be made of paragraph 53 requires a review of the record which led up to the proposed amendment.

The original complaint against Holiday Inns and Chase alleged three theories. The first alleged that Holiday Inns individually and the second alleged that Holiday Inns and Chase jointly conspired to and were successful in bringing about a termination of an arrangement which plaintiff had with the Jamaican government to sell to it its Hotel Asset at a price favorable to plaintiff. The object of these two theories of wrongdoing by defendants was accomplished in August 1976. The third theory also involved a charge of conspiracy against both defendants. Its dual purpose was to bring about a sale of the Hotel Asset on any terms that would enable Chase to recoup its loan to plaintiff and would also assist Holiday Inns in obtaining concessions in its lease with plaintiff. The purposes of this conspiracy were accomplished in December 1977, when Chase satisfied plaintiff's loan by transferring to an agency of the Jamaican government the collateral which it held for the defaulted loan consisting of the stock of Rose Hall (H.I.) and 3,000 acres of land, and Holiday Inns obtained a major modification of its lease.

This Court held, upon the motion of Holiday Inns for summary judgment, that the claims of plaintiff based upon the first two theories of liability were barred under principles of *res judicata* by a Georgia judgment but that the claim based upon the third theory was not. See original and supplemental opinions in *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.,* 494 F.Supp. 1139; 494 F.Supp. 1158 (D.Del. 1980). The opinion was implemented by an order of June 27, 1980, which read:

> "Holiday Inns' motion for summary judgment will be granted except insofar as it is directed to that aspect of the conspiracy alleged in paragraph 20 pertaining to the sale of the Rose Hall (H.I.) stock and the 3,000 acres of land."

On July 1, 1980, plaintiff amended the complaint, over the objection of Holiday Inns, to meet the limitation of the order of June 27, 1980. The amendment realleged the allegations of the original complaint and added a new Count III which specifically alleged the conspiracy charge.[3]

Prior to January 11, 1982, when plaintiff moved to amend the complaint, plaintiff made no attempt to alert Holiday Inns to the alternate theory of liability based upon the facts alleged in paragraph 51 in support of the conspiracy theory of liability.

■ In support of the motion to amend the complaint, plaintiff makes four points which, as general propositions, are well established: first, the mandate of Rule 15(a) which declares that leave to amend "shall be freely given when justice so requires" must be heeded. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); second, as a practical matter the only reason for not allowing an amendment is prejudice to the opposing party. *Kerrigan Estate v. Seagram & Sons, Inc.,* 199 F.2d 694, 696 (3d Cir. 1952); third, in filing an amendment delay alone is not a sufficient measure of prejudice. *Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 n.19 (3d Cir. 1969); and fourth, the federal rules abolish the requirement that legal theories be pleaded and if facts are pleaded which establish that a recovery is warranted, a Court will apply the relevant theory even though not pleaded. 5 C. Wright & A. Miller, Federal Practice and Procedure, Civ-

---

**3.** The amended complaint contained other allegations not presently important, in Count IV.

il § 1219 at 141–143, 144 n. 50 (1969). *Weinstein v. Williams-McWilliams Industries, Inc.,* 313 F.Supp. 876, 879 (D.Del. 1970); *Siegelman v. Cunard White Star Ltd.,* 221 F.2d 189, 196 (2d Cir. 1955).

These general principles, although normally followed, are subject to exceptions, and it is the exceptions, defendants argue, which are applicable to the present case and require a denial of the motion.

Defendants argue first that the motion to amend was filed in bad faith, and second, if the amendment should be allowed, defendants will sustain substantial prejudice.

To support their claim of bad faith, defendants argue that plaintiff, with knowledge of the relevant facts and law, deliberately refrained from pleading or later making known to defendants its alternative theory of Holiday Inns' liability. Defendants argue that this inaction on plaintiff's part was for the purpose of keeping the defendants uninformed of plaintiff's intention to rely upon the alternative theory until after the cut off date for discovery had passed and the case was ready for trial and thereby to render defendants unable to adequately prepare their defense. This was a calculated strategy, defendants argue, which plaintiff utilized to mislead the defendants and to gain for itself an unfair advantage. These circumstances, defendants argue, require the Court to find that plaintiff has acted in bad faith in delaying filing its motion to amend the complaint, and for that reason the motion should be denied.

Certain facts are uncontroverted.

The initial complaint filed on April 11, 1979, contained allegations identical to the proposed paragraph 53 relating to the alleged acts of wrongdoing by Holiday Inns in connection with a lease dispute between it and the plaintiff. Like paragraph 53,

paragraph 17(d) and (e) alleged that Holiday Inns maliciously and falsely told Chase that Holiday Inns was not bound by the terms of the lease, that it threatened not to perform its obligations under the lease, and to file a suit on a claim under the lease to recover $4,000,000 from Rose Hall.

It is true that the allegations of the original complaint were in the context of plaintiff's claim that the defendants had interferred in August 1976 with the arrangement which plaintiff had to sell the Hotel Asset to the Jamaican government. The significant fact is, however, that the same facts which plaintiff proposes to inject into the case by paragraph 53 were known to plaintiff as early as April 11, 1979.

Thus, the facts which plaintiff would now assert as a basis for its claim of tort liability against Holiday Inns were well known to plaintiff for over five years. In addition, plaintiff was advised that under the facts Jamaican law would support a theory of tort liability on the part of Holiday Inns independent of a liability for conspiracy on the part of Holiday Inns and Chase. Plaintiff had sent a copy of its complaint to Richard Mahfood,[4] a Jamaican lawyer, to seek his opinion, *inter alia,* on whether the complaint disclosed a cause of action under Jamaican law. Shortly after the complaint had been filed plaintiff received an affirmative answer in a memorandum dated August 26, 1979. It concluded that in Mr. Mahfood's judgment the complaint did state a good cause of action for a conspiracy. (Appendix p. 11, Doc. 271A). It added: (Appendix p. 10, Doc. 271A)

"If there was a breach of that loan agreement by Chase, induced or procured by Holiday Inns, Inc., then Chase will be liable for breach of contract and Holiday

---

**4.** At p. 3 of Holiday Inns' brief (Doc. 271) it is stated:

> Mr. Mahfood, one of the attorneys acting for Rose Hall, Ltd. at the hearing in Delaware on Jamaican substantive law, is an attorney who formerly practiced in Jamaica, but for the past several years has practiced law in a large New York firm. Holiday Inns further

understands that Mr. Mahfood has, over the course of the past six or more years, represented Mr. Rollins and his companies in various legal matters, including the Jamaican action filed in 1976 and this case in which Mr. Mahfood filed affidavits on Jamaican law and proceedings some time ago.
This is not denied.

Inns will be liable for the tort of inducing a breach of contract."

and that (Appendix p. 11, Doc. 271A):

Apart from any question of conspiracy, Chase would be liable for breach of its contractual obligations and Holiday Inns, Inc. would be liable for tortiously inducing or procuring the breach;"

In fact, a draft of the original complaint contained an allegation that Holiday Inns had maliciously and wrongfully and with an intent to injure the plaintiff "induced and procured" the sale by Chase of the real estate and hotel property and stock of Rose Hall (H.I.), Ltd. at a gross undervalue in breach of Chase's implied contractual and equitable fiduciary duties to act with reasonable care and in good faith in the exercise of its powers as mortgagee and pledgee. (Appendix, p. 25, Doc. 271A).[5] Thus, shortly after the initial complaint and almost a year before the first amended complaint was filed plaintiff was made aware that if Holiday Inns induced or procured Chase to commit actions which resulted in injury to plaintiff, Holiday Inns would be liable under Jamaican law. This is the alternative theory alleged in paragraph 53.

Before January 11, 1982, when plaintiff filed its motion to amend, the following formal discovery took place in addition to the exchange of extensive interrogatories by the parties, (Doc. 306): the depositions of at least 21 persons were taken over a period of approximately 65 days in Atlanta, Memphis, Miami, New York City, Tampa and Wilmington. The transcripts of the depositions thus far have exceeded 8,000 pages, without counting five days of recent deposition testimony not yet transcribed, and approximately 4,667 documents have been produced having in excess of 12,000 pages.

Plaintiff has offered no explanation why the alternative theory had not been pleaded in the original or in the first amended complaint or within a reasonable time thereafter. The attorney who is presently prosecuting the case began to do so in late July of 1980, shortly after the first amended com-

plaint had been filed. He had reviewed the file, was necessarily familiar with the facts disclosed in paragraphs 17(d) and (e) of both the original and amended complaints and had reviewed the Mahfood memorandum concerning the Jamaican law. He thus had knowledge of the facts which, if proven, would support the alternative theory of liability alleged in paragraph 53. He asserts that he was not prepared to commit plaintiff to the position that Jamaican law would govern until he had independently examined the law and was satisfied that it was favorable. Accordingly, in October 1981, he began through associates to research the Jamaican law in depth. (Doc. 281) It may be that he was justified in doing this rather than relying upon Mr. Mahfood's memorandum when the case was tried. It was no reason, however, for not relying upon Mahfood's opinion in pleading the alternative theory in a further amendment to the complaint shortly after the first amended complaint had been filed. All that is required for an attorney to file a pleading is to believe there is good ground to support the alternative theory. Rule 11. The Mahfood opinion would have justified this belief.

Nevertheless, plaintiff argues that the motion to amend was timely. It points out that on October 10, 1980, defendants produced a memorandum from Lapwing, to Rose and Feldman (all employees of Holiday Inns) dated September 8, 1976. This disclosed for the first time, plaintiff argues, important evidence that Holiday Inns was attempting to coerce Chase into selling plaintiff's collateral to the Jamaican government. Later, plaintiff asserts it uncovered further documentary and deposition evidence which confirmed that such was Holiday Inns' intention. Then, in a brief dated October 27, 1981, Holiday Inns took the position that the evidence which plaintiff had developed "unequivocally demonstrates" that Holiday Inns and Chase were not engaged in conspiratorial activities. (Doc. 259, A–26). It was a combination of these circumstances which plaintiff asserts triggered the filing of the motion to

---

5. This was not included in the original complaint.

amend to assert the alternative theory. The desirability of its doing so was emphasized when, on January 8, 1982, Holiday Inns opposed plaintiff's demand to admit principles of Jamaican law on the ground that plaintiff's alternate theory, which was the basis of its demand to admit, was outside the conspiracy which had been pleaded. (Doc. 232, ¶¶ 19, 20, 22 and 23). Almost immediately thereafter, on January 11, 1982, plaintiff filed its motion to include paragraph 53 in the complaint. Plaintiff asserts that whereas initially the conspiracy theory "was simple, probable, and seemed the best theory" (Doc. 293, p. 4), the changed circumstances made it apparent that the alternative theory should be pleaded. This, of course, provides an explanation why the motion to amend was filed when it was. It is no explanation why the amendment was not filed shortly after the first amended complaint had been filed on July 1, 1980.

It may be that in many circumstances a party is not required to plead theories but only facts. *See Jenkins v. Fidelity Bank*, 365 F.Supp. 1391, 1398 (E.D.Pa.1973) ("It is not necessary to set out a legal theory on which the claim is based"); *Haczela v. City of Bridgeport*, 299 F.Supp. 709, 711 (D.Conn.1969) (a complaint "need not contain a definite legal theory of the case"); *Oleck v. Fischer*, 401 F.Supp. 651, 655 (S.D. N.Y.1975) (defendant's contention that complaint did not show "a theory upon which plaintiffs seek recovery" was "without merit. Theories of recovery need not be pleaded. . . ").

A party may state as many separate claims as he has regardless of consistency. Rule 8(e)(2). A plaintiff who proposes to rely upon the same facts to support different theories should be required to make known by pleadings or otherwise what theories he will rely upon in fairness to a defendant. This is especially so where, as here, the defenses to the different theories may not be the same.

Plaintiff argues that its motion to amend must be granted because defendants have failed to establish they will be prejudiced by it. In this Court's memorandum of January 28, 1982, it said that the crucial question to be decided in connection with the motion to amend is whether the injection into the case of the alternative theory will prejudice defendants. While in many cases undue prejudice "is the touchstone for the denial of an amendment," *Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978), there are exceptions to this. An amendment should be denied, without requiring defendants to demonstrate prejudice, when the amendment is grounded on "bad faith or dilatory motives, truly undue or unexplained delay. . . ." *Heyl v. Patterson International, Inc. v. F. D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), a decision based upon *Foman v. Davis, supra*. In the instant case it is not necessary for the Court to find that plaintiff has acted in bad faith in seeking the amendment. It is clear that plaintiff has provided no satisfactory explanation for its long delay in filing its motion to amend. Undue delay which is not satisfactorily explained is equivalent to bad faith.

The motion to amend paragraph 53 except the first sentence will be denied.

### Count VI

Paragraph 31 of the original and first amended complaint alleges that the 3,000 acres which Chase sold to the Jamaican government were part of a 5,500 acre tract belonging to plaintiff for which there existed a long-term overall plan of integrated development and by wrongfully selling the 3,000 acre tract Chase substantially impaired the potential value of the remaining land thereby resulting in further damages to plaintiff in the amount of $12,000,000. Paragraph 32 alleges that a water system owned by plaintiff having a value of $3,500,000 which served or could service the 3,000 acres, including the Out Parcels [6] and

---

**6.** Paragraph 12 described "Out Parcels" as land covered by the mortgage given to Chase, but which Chase agreed was not to be subject to the mortgage.

2,500 adjacent acres owned by plaintiff was disrupted by defendants and the value of the water system destroyed. The allegations of paragraphs 31 and 32 are actions by defendants alleged in paragraph 20 to be pursuant to a conspiracy between them.

Paragraph 54 of Count VI incorporates and realleges by its generality paragraphs 20, 31 and 32. It purports to assert a cause of action alternatively on behalf of Rose Hall Developments Ltd. ("Developments"). Developments is alleged in paragraph 55 to be a wholly owned subsidiary of plaintiff, having common officers and directors with plaintiff, and under common ownership and control of plaintiff, and that all of Developments properties and business activities are closely related to those of the plaintiff.

Paragraph 56 alleges that Developments held title to portions of the additional 2,500 acres referred to in paragraphs 31 and 32, and that the relationship between plaintiff and Developments is such that plaintiff may properly recover for diminution in the value of such real estate or, alternatively, to recover the same amounts for the wrongful diminution of the value of its stock in Developments, or, alternatively, to the extent that plaintiff may not itself be entitled to recover for the loss to the acreage and water system, then as to those portions of the damages attributable to the land titled in the name of Developments and to the water system owned by Developments, judgment should be entered in favor of Developments. This last alternative has been treated by the parties as an application to add Developments as a party plaintiff.

Insofar as paragraph 56 purports to assert a cause of action on plaintiff's behalf for damages done to property of Developments or to its stock in Developments the action can only be asserted derivatively on behalf of Developments. 13 Fletcher Cyclopedia Corporation (Perm. Ed.) 5910.

The real argument pertains to plaintiff's attempt in paragraph 56 to plead a cause of action on behalf of Developments and in effect to amend the complaint to have Developments added as a party plaintiff.

Chase argues that the last event pertinent to any claim Developments might have occurred in December 1977, and that as a consequence an amendment to the complaint to add Developments as a party would be barred in December 1980, by the Delaware three year statute of limitations, 10 Del.C. §§ 8106, 8121. Plaintiff purports to answer this argument by pointing out that Rule 21 provides that parties may be added by order of the Court at any stage of the action on such terms as are just, and that by virtue of Rule 15(c) Count VI relates back to the time when the original suit was begun. Chase, for its part, argues that where there has been inexcusable delay by plaintiff in attempting to add Developments as a party this precludes the relation back operation of Rule 15(c) without regard to whether or not the delay has prejudiced Chase.

The issue then, as Chase correctly points out, is whether plaintiff at this late stage may have Developments added as a plaintiff and thus, by virtue of Rule 15(c), avoid the bar of the statute which would otherwise be applicable. At the outset it should be noted that Rule 15(c) speaks in terms of the relation back of an amendment "changing the party against whom a claim is asserted." Nevertheless the Advisory Committee's Note of 1966 points out that the approach of Rule 15(c) is also relevant to amendments substituting or adding plaintiffs. 3 Moore's Federal Practice ¶ 15.15 [4.–2] p. 15–231.

Unquestionably, plaintiff and Chase had knowledge long before plaintiff attempted to include Count VI by amendment that the overall plan of integrated development and the water system were not owned by plaintiff as alleged in paragraphs 31 and 32, but were in fact owned by Developments. In a memorandum filed by Chase on August 10, 1979, it stated with reference to paragraph 31 of the complaint:

"Rose Hall did not own certain parcels of this adjacent realty; certain of those parcels were owned by Rose Hall Developments and possibly by other corporations . . . . the [water] system is owned and

operated by Rose Hall Developments." (Doc. 23, p. 37–38).

On November 1, 1979, plaintiff filed a brief which stated at p. 56 in a footnote:

"Because no relief is sought or would be appropriate which would require the presence of or effect the rights and duties of either Rose Hall Developments or Rollins Jamaica, neither is an indispensible party to this litigation."

and in the same footnote, plaintiff said:

"Should it become necessary at a later point, we see no obstacle to joining them (Rose Hall Developments and possibly Rollins Jamaica, Ltd.) as parties in the action against Chase." (Doc. 29, p. 56).

The Court has searched the record in vain for an explanation by plaintiff why, when it knew of the possibility of adding Developments as a party as early as November 1979, it made no attempt to do so until January 11, 1982. At the argument on January 22, 1982, plaintiff's attorney was asked why Count VI had not been pleaded before. He replied that he didn't know about it but that at some point it came out that there were parts of the land that Developments owned and that "it wasn't pleaded in the first place because we didn't know about it at the time we pleaded before." (Tr. 45). The facts do not bear this out. The first amended complaint was filed on July 1, 1980, almost nine months after plaintiff had acknowledged that Developments and not plaintiff owned the land and water system and after plaintiff had expressed the possibility that Developments might be added as a party.

Chase argues that Rule 15(c) does not provide for a relation back of an amendment which is filed as a result of inexcusable neglect as to who the plaintiff should be. Plaintiff, on the other hand, contends that the relation back test in *Garr v. Clayville*, 71 F.R.D. 553, 556 (D.Del.1976) is the determinative test, and that the proposed amendment to add Developments as a party meets this test. Plaintiff emphasizes that the negation of inexcusable neglect is not a requirement under Rule 15(c) as amended in 1966 and that authorities cited by Chase

to the contrary were decided under Rule 15(c) as it existed prior to the 1966 amendment.

It is not necessary to resolve this question for another approach appears to be the proper one and requires a denial of the amendment. In 1966 the last sentence in Rule 15(c) was added. It reads:

"An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

At the same time the last sentence in Rule 17 was added to it. It reads:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

Because of their simultaneous adoption, Rules 15(c) and 17 should be read together. The revisors suggested as much when Rule 15(c) was amended in 1966:

"Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs. Also relevant is the amendment of Rule 17(a) (real party in interest)."

Notes of Advisory Committee on Rules.

3 Moore, Federal Practice § 15.15 [4.–2] at 15–233 states:

"The 1966 amendments to Rule 17(a), prescribing a lenient procedure for substituting as plaintiff the real party in interest after defendant's objection, will dispose of many problems which might have arisen under Rule 15(c) . . . ."

The changes in both Rule 15(c) and Rule 17(a) relate to the addition of new parties; Rule 17 specifically to the addition of a new party in interest. The addition of Developments as a plaintiff is sought by plaintiff so that the action can be prosecuted by Developments as the real party in interest. To save a case from dismissal because of lack of a real party in interest, Rule 17(a) states in effect that this will occur unless the real party in interest is added at a "reasonable time." As stated, the fact that Developments is the real party in interest was recognized by all parties, and plaintiff suggested it might be added as a party, before the first amendment to the complaint was filed on July 1, 1980. The motion of plaintiff to file an amendment to add Developments as a party plaintiff was not filed within a reasonable time.

The motion to amend Count VI will be denied.

## Conclusion

The motion to amend is granted with respect to paragraph 51 and the first sentence of paragraph 53, and with respect to paragraph 52. It is denied with respect to paragraph 53 other than the first sentence and with respect to Count VI.