**Thomas ALBRECHTA, Plaintiff,**

**v.**

**BOROUGH OF WHITE HAVEN, Defendant.**

Civ. No. 91–0062.

United States District Court, M.D. Pennsylvania.

Dec. 4, 1992.

Michael John Foley, Scranton, PA, for plaintiff.

John A. Bednarz, Jr., Michael Angelo Pendolphi, Wilkes–Barre, PA, for defendant.

## MEMORANDUM

KOSIK, District Judge.

Before the court is a motion for summary judgment filed by the defendant, Borough of White Haven ["White Haven"]. The plaintiff, Thomas Albrechta ["Albrechta"] has filed an opposition brief, and the motion is ready for disposition.

## I. Background

On September 18, 1989, Albrechta began working as the Chief of Police of White Haven pursuant to an agreement entered into with White Haven Borough Council ["Council"]. No contract was formally entered into at that time. On December 14, 1989, Albrechta and White Haven entered into a written contract of employment.[1] Pursuant to the contract, the term of employment would be from September 18, 1989 to December 31, 1992. Paragraph three of the contract also provided that:

> Employee agrees and understands, notwithstanding any of the other terms and conditions contained herein, that he shall be on probation from September 18, 1989 to March 17, 1990.

Additionally, paragraph sixteen provided that "the provisions of the Police Tenure Act shall apply in all cases regarding the removal of the Employee as a Police Officer."

In January of 1990, five new council members took their positions on Council as a result of the November, 1989 election. At a Council meeting held on March 14, 1990, Council terminated Albrechta's employment contract, three days before the expiration of Albrechta's probationary period. Albrechta was notified of this decision and, subsequently on March 16, 1990, requested a post-termination hearing. This request for a hearing was denied.

Albrechta filed a complaint commencing this action on January 9, 1991. An amended complaint was filed on March 7, 1991. In response to a motion to dismiss or for a more definite statement filed by White Haven, this court ordered Albrechta to file a second amended complaint in order to comply with the appropriate pleading standards.[2] Albrechta filed a second amended complaint on August 5, 1991.[3] The second amended complaint raised four counts against White Haven. Count I alleges that White Haven deprived Albrechta of a property and a liberty interest without due process of law. Count II claims that White Haven deprived Albrechta his constitutional rights of free speech and association. Count III alleges that Albrechta has suffered a deprivation of liberty that has imposed a stigma upon his reputation. Finally, Count IV, a pendent state law claim, alleges a violation of Pennsylvania Local Agency Law, 2 Pa.C.S.A. § 553.

After a period of discovery, White Haven filed a motion for summary judgment on March 6, 1992. Albrechta's brief in opposition was filed on March 31, 1992.

## II. Standard for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Williams v. Borough of West Chester*, 891 F.2d 458, 463–464 (3d Cir.1989). Summary judgement will not lie "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the non-moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982).

The Supreme Court has held that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A plaintiff "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*,

---

1. A copy of this contract is attached to the brief in support of defendant's motion for summary judgment, Document 25, as Exhibit A.

2. *See* Document 15.

3. Document 16.

477 U.S. at 256–57, 106 S.Ct. at 2514. "Such affirmative evidence, regardless of whether it is direct of circumstantial—must amount to more than a scintilla, but may amount to less [in the evaluation of the court] than a preponderance." *Williams*, 891 F.2d at 460–61. We must evaluate each of the counts of Albrechta's second amended complaint under this standard.

### III. Discussion

■ Count I of the second amended complaint claims that Albrechta was deprived of a liberty and a property interest without due process of law. To succeed on a claim that the removal from a position of public employment violates due process, the public employee must prove:

> (1) that the dismissal deprived him of a property or liberty interest, and (2) that the employer did not afford him adequate procedural protections in connection with the action. *Federal Deposit Ins. Co. v. Mallen*, [486 U.S. 230, 238–40,] 108 S.Ct. 1780, 1787 [100 L.Ed.2d 265] (1988); *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538–41 [105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494] (1985). In the absence of circumstances requiring his prompt removal, an employee with a protected interest in his employment may be terminated only after receiving notice of the charges against him and an opportunity for hearing sufficient to respond to those charges. *Id.* at 542–48 [105 S.Ct. at 1493–97].

*Richardson v. Felix*, 856 F.2d 505, 507 (3d Cir.1988).

As in *Richardson*, the issue before the court regarding Count I is a narrow one. It is not disputed that Albrechta was dismissed from his employment or that he was not given notice or a chance for a hearing before or after his termination. Thus, Albrechta can prevail on his due process claim "if he can establish that his dismissal deprived him of a protected interest." *Id.*

■ Albrechta claims he has been denied of both a property and a liberty interest without due process of law. State law determines whether a property interest exists. *Brown v. Trench*, 787 F.2d 167, 170

(3d Cir.1986) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). A government employee may have a property interest protected by the due process clause of the fourteenth amendment pursuant to state statute, regulation, local government policy, or an agreement between the employee and the governmental employer. *See Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709; *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). For example, "[t]he hallmark of a constitutionally protected property interest [in public employment] is an individual entitlement [that he] 'cannot be removed except 'for cause.' ' " *Richardson*, 856 F.2d at 509 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982)).

There are two possible state statutes that may be relevant to the plaintiff's case. According to the civil service provisions of the Pennsylvania Borough Code, 53 Pa.S.A. §§ 46171–46195 [the "Borough Code"], a police officer can only be removed for cause. *See* 53 Pa.S.A. § 46190 (listing reasons for which officers may be removed). This "for cause" requirement for removal also applies to police officers serving during a probationary period under the Borough Code. *See* 53 Pa.S.A. §§ 46186, 46183. The Police Tenure Act, 53 Pa.S.A. §§ 811–15 [the "Act"], which applies to boroughs having a police force of less than three members, also allows for removal only for listed causes, "with the exception of policemen appointed for a probationary period of one year or less." *See* 53 Pa.S.A. § 812. White Haven argues that the Police Tenure Act should apply, as White Haven employed less than three regular, full-time police officers, and the contract between Albrechta and White Haven specifically provided for application of the Police Tenure Act. Under the Police Tenure Act no "for cause" requirement exists, as Albrechta was only a probationary employee.

■ In their respective discussions over whether the Police Tenure Act applies to

White Haven, both parties contend that the Act applies only to communities having a police force of less than three "regular, full-time police officers."[4] However, we do not read the "regular, full-time" requirement into the Act. Section 811 of the Act provides that "[t]his act shall apply to ... each borough ... having a police force of less than three members." 53 Pa.S.A. § 811.[5] We cannot find any requirement that these three officers be "regular" or "full-time" anywhere in the Act.[6] A recent decision by the Pennsylvania Commonwealth Court is instructive on this issue. In *Mullen v. Borough of Parkesburg*, 132 Pa.Commw. 321, 572 A.2d 859 (1990), the Commonwealth Court found that the trial court was correct in concluding that the Police Tenure Act did not apply. Specifically, the court found that the plaintiff, Mullen, did not overcome the concerns of 53 P.S. § 811, "which limits coverage to police forces consisting of less than three members." *Id.* at 324, 572 A.2d at 861. The court found that "other than Mullen, the Borough employed only a Chief of Police and a Sergeant. *It directly follows that Mullen, whether full-time or part-time, constitutes the third member of the Borough's police force*," making the Act inapplicable. *Id.* (emphasis added). Therefore, on the basis of this guidance, we find that for the Police Tenure Act to be applicable, White Haven's police force must have consisted of less than three members, whether full-time or part-time.

█ Having thus defined the issue, we can easily determine that the Police Tenure Act does not apply in the present case. White Haven admits that it employed anywhere from five to seven part-time police officers during Albrechta's employment as a full-time Police Chief,[7] making the civil service provision of the Borough Code, not the Police Tenure Act, applicable. It is of no moment that Albrechta's contract stated that the Police Tenure Act would apply. Because the Pennsylvania legislature has spoken clearly on this issue, an individual Borough cannot contract around a legislative enactment.

█ Under the provision of the Borough Code dealing with probationary officers, 53 P.S. § 46186, a probationary employee, who is rejected for a permanent appointment, has a sufficient property interest in his employment so as to be entitled to notice and opportunity for a hearing. *Roth v. Borough of Verona*, 74 Pa.Commw. 352, 460 A.2d 379 (1983). *See also Elmer v. Board of Commissioners of Wilkins Township*, 122 Pa.Commw. 516, 552 A.2d 745, 746 (1989) (applying analogous section of the First Class Township Code dealing with probationary employees, 53 P.S. § 55640). However, because a probationary employee does not enjoy the same job security or guarantee of continued employment as that enjoyed by a tenured or permanent status employee, the due process protections defined by the Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), may not apply with the same force. *Elmer*, 552 A.2d at 748; *Cunningham v. State Civil Service Commission*, 17 Pa. Commw. 375, 332 A.2d 839 (1975). While it is clear that Albrechta was not provided with a pre-termination hearing, this court has not been briefed on the procedural protections that should have been provided

---

4. *See* Brief in Support of Defendant's Motion for Summary Judgment [hereinafter "Defendant's Brief"], Document 25, at p. 8; Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment [hereinafter "Plaintiff's Brief"], Document 30, at pp. 11–12.

5. Similarly, § 46171 of the Borough Code provides that "[t]his subdivision (j) [containing civil service provision for police and firemen] of this article shall not apply to any borough having a police force of less than three members." 53 Pa.S.A. § 46171.

6. Apparently, the parties are attempting to incorporate language from § 812 into § 811. Section 812 provides that "[n]o person employed as a regular full time police officer" can be removed except for cause. 53 P.S. § 812. It makes perfect sense, however, that the "regular full time" requirement is incorporated into the section that creates a property interest in employment of police officers but not in the section defining the applicability of the Act to communities.

7. Exhibits C and D to Defendant's Brief, Document 25.

to Albrechta as a probationary employee. Accordingly, we cannot fully resolve Count I of the second amended complaint. However, it should be apparent that White Haven's motion for summary judgment on that count must be denied.

■ In Count II of the second amended complaint Albrechta claims that his first amendment rights of freedom of speech and political association were violated by White Haven. The first amendment prohibitions that "Congress shall make no law ... abridging the freedom of speech ... or association," which is made obligatory to the states by virtue of the fourteenth amendment, are triggered when some form of state power is exercised. In *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), the Supreme Court stated that the retention of public employment cannot be conditioned upon a "basis that infringes the employee[']s constitutionally protected interest in freedom of expression." Similarly, in *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) the Court stated that the government:

> may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

*Id.* (internal quotation omitted).

■ With respect to freedom of speech, "[p]ublic employees retain their first amendment right to comment on matters of public concern," *Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir.1988), upon which free and open debate is vital to informed decision making by the electorate. *Pickering v. Board of Education*, 391 U.S. 563, 571–72, 88 S.Ct. 1731, 1736–37, 20 L.Ed.2d 811 (1968). To demonstrate that a state employer has violated the first amendment's guarantee of freedom of speech, the public employee must first show that he engaged in protected conduct, that is, he must show that his speech pertained to a matter of public concern. *Rode*, 845 F.2d at 1201. If the plaintiff demonstrates that he was engaged in protected conduct, he must next show that the conduct "was a 'substantial' or 'motivating' factor in the employer's [personnel] decision." *Id.* at 1200.

If the plaintiff makes such a showing, a court must examine any state imposed restrictions on such expression by balancing:

> the interests of the [employee], as a citizen, in commenting upon matters of public concern [against] the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *Rode*, 845 F.2d at 1202. The defendant's legitimate interest in promoting efficiency, integrity, and discipline may be outweighed by the plaintiff's interest in public discourse. *Rode*, 845 F.2d at 1202. The disruption in the workplace caused by the employee's speech is also relevant, *see Id.*, but a finding of actual disruption is not sufficient to a determination that the employees speech is not protected. *Zamboni v. Stamler*, 847 F.2d 73, 78 (3d Cir.), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988). If the plaintiff demonstrates the existence of a prima facie case, the defendant must show "by a preponderance of the evidence that [it] would have reached the same decision as to [the plaintiff's] employment even in the absence of the protected conduct." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

■ The first and fourteenth amendments also protect an individual's right to associate with others for the common advancement of political beliefs and ideas. *Kusper v. Pontikes*, 414 U.S. 51, 56–57, 94 S.Ct. 303, 307–08, 38 L.Ed.2d 260 (1973). Pressure upon public employees to support particular political candidates, not of the individual's own choice, constitutes a coercion of belief in violation of the first amendment. *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. In *Elrod v. Burns*, 427 U.S.

347, 359–60, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976) the Supreme Court held that "the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments."

■ To demonstrate a violation of the first amendment in this context, plaintiff bears the burden of proving (1) that he is a public employee, (2) that he was engaged in protected conduct such as maintaining an affiliation with a particular political party, and (3) that his political affiliation was a substantial or motivating factor in the state actor's personnel decision. *Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3d Cir.), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984). Once a plaintiff has made this showing, the burden shifts to the employer who may dispel the inference of unconstitutional conduct by showing "by a preponderance of the evidence that it would have reached the same decision as to the [employee's status] even in the absence of protected conduct." *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576.

■ Albrechta claims that his guarantee of free speech was violated because his comments to various newspapers were considered by White Haven as a basis for his dismissal. Specifically, Council Chairperson Marie Piro testified at her deposition that several quotes attributed to Albrechta by the media had an influence on Council's decision to terminate.[8] Albrechta also claims that his rights of political association were violated because his dismissal was partly based on his association with John Topita, a former Council member and a political opponent of several Council members who voted on his dismissal, including Chairperson Piro. Indeed in her deposition Piro testified that she was aware of the association between Albrechta and Topita and that spending time with Topita was one of the things Albrechta should not have been doing.[9]

In responding to Albrechta's first amendment claim in its motion for summary judgment White Haven merely points out that there was a report and recommendation from the White Haven Borough Police

Committee that raised various allegations against Albrechta and called for his dismissal. White Haven also notes that, at the time of Albrechta's dismissal, the Borough Council was made up of 4 Republicans and 3 Democrats, which belies Albrechta's claim that he was dismissed because of his political affiliation, Albrechta being a Democrat.

White Haven's limited discussion of Albrechta's first amendment claim may provide some showing that Albrechta's termination may have been effected even in the absence of his protected conduct. Such evidence, however, does not overcome Piro's deposition testimony that Albrechta's arguably protected conduct may have been a factor in his termination. Thus, we are not convinced that summary judgment should be granted with regard to this claim.

■ Count III of the second amended complaint claims that Albrechta has suffered a deprivation of a liberty interest through the imposition of a stigma upon his reputation by White Haven which has resulted in his inability to secure employment in the law enforcement filed. Ordinarily, mere defamation by itself does not infringe a liberty interest, and therefore does not constitute a cause of action under 42 U.S.C. § 1983. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Robb v. City of Philadelphia,* 733 F.2d 286, 294 (3d Cir.1984) ("Stigma to reputation alone ... is not a liberty interest protected by the fourteenth amendment"); *Clark v. Solem,* 628 F.2d 1120, 1121 (8th Cir.1980). However a harm to reputation claim may be elevated to one of constitutional significance if it is alleged that "a right or status previously recognized by state law was distinctly altered or extinguished ... officially removing the interest from the recognition and protection previously afforded by the state." *Paul,* 424 U.S. at 711, 96 S.Ct. at 1165; *Sergio v. Doe,* 769 F.Supp. 164, 166 (E.D.Pa.1991). Albrechta has alleged that a right or status previously recognized by state law, that is, his employment as Chief of Police of White Haven, has been altered

---

8. *See* Piro Deposition, Exhibit, Document 23 at pp. 79–85.

9. *See* Piro Deposition, Exhibit, Document 23 at pp. 34–35.

by the actions of White Haven in defaming him in conjunction with his dismissal from employment. *Accord Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). This claim, which White Haven has not specifically addressed in its summary judgment motion,[10] will therefore also survive that motion.

In Count IV of the amended complaint Albrechta alleges a pendent state claim consisting of a violation of Pennsylvania Local Agency Law through the deprivation of any opportunity to be heard. Neither party has addressed the specific merits of this claim, and we see no basis to dismiss this claim or enter judgment upon it of our own accord. Accordingly, because the federal Counts will remain, White Haven's motion with respect to this pendent Count will be denied.

*IV. Conclusion*

For the forgoing reasons, White Haven's motion for summary judgment will be denied with respect to all Counts of the second amended complaint. Accordingly, a pre-trial conference will be scheduled in order to prepare for a trial on this matter.

---

**10.** While not addressing this claim specifically, White Haven has repeatedly claimed that Albrechta did not have a property *or liberty* inter-est in his employment. Therefore we feel our brief discussion of this Count is appropriate.