Anthony E. DeFIORE

v.

Joseph C. VIGNOLA

Civ. A. No. 93–CV–1156.

United States District Court,
E.D. Pennsylvania.

July 12, 1994.

Leonard Zack, Leonard Zack & Associates, Philadelphia, PA, Jodi Ellenbogen, Leonard Zack & Associates, New York City, for plaintiff.

E. Jane Hix, Asst. City Sol., Philadelphia, PA, for defendant.

## DECISION

JOYNER, District Judge.

This employment discrimination action was tried non-jury before the undersigned on April 12–13, 1994. The parties have submitted their proposed findings of fact and conclusions of law and the matter is now ripe for adjudication. Accordingly, this Court hereby makes the following factual findings and legal conclusions.

## FINDINGS OF FACT

1. Plaintiff, Anthony DeFiore is an adult individual who presently, and at all times relevant to this action, resided at 1408 South 9th Street in Philadelphia, Pennsylvania. Mr. DeFiore has a Bachelor of Arts degree in history from the University of Pittsburgh and a Master's degree in Urban Planning from New York University. (N.T. 4/12/94, 78–79).

2. Defendant, Joseph Vignola, is an adult individual who presently, and at all times relevant to this action, serves as the duly-elected Philadelphia City Councilman for the First Councilmanic District. (N.T. 4/12/94, 8). The First Councilmanic District runs from approximately Oregon Avenue in South

Philadelphia between Broad Street and the Delaware River, along portions of Front Street to Kensington Avenue and encompasses neighborhoods in portions of both South and North Philadelphia and the Kensington, Fishtown and Port Richmond sections of the city. (N.T. 4/12/94, 34–35, 54–55; 4/13/94, 38).

3. Both Anthony DeFiore and Joseph Vignola are active members of the Philadelphia Democratic Party. (N.T. 4/12/94, 53, 80–86).

4. Mr. Vignola was first elected to the position of Councilman for the First District in the November, 1991 election and was sworn into office on January 6, 1992. Mr. Vignola's predecessor in that office, James "Jimmy" Tayoun, had resigned from that position in April, 1991 shortly after he was indicted on federal criminal charges. (N.T. 4/12/94, 8; Deposition of James Tayoun, 9/21/93, 5–6).

5. Anthony DeFiore worked as an administrative assistant for Councilman Tayoun prior to his resignation. In his position with Councilman Tayoun's office, Mr. DeFiore was primarily responsible for delivering constituent services. (N.T. 4/12/94, 79–80, 105).

6. Constituent Service Work consists primarily of assisting residents/constituents of the district with any problems which they may have and runs the gamut from helping them to resolve utility bill and trash collection problems to securing street repairs to helping with funeral arrangements. (N.T. 4/12/94, 11–12, 82, 143–145, 154).

7. On May 1, 1991, shortly after Jimmy Tayoun resigned from his councilman's position for the First District, Joseph Vignola met with Mr. Tayoun and his staff and several other members of the Philadelphia Democratic Party in an effort to garner additional support for Mr. Vignola's campaign for Mr. Tayoun's former seat on city council. At that meeting, Mr. Vignola stated that, with the exception of Mr. Tayoun's Chief of Staff, he would not let the members of Mr. Tayoun's staff go simply because they had been hired by another elected official. Instead, Mr. Vignola said that if elected, he would review Mr. Tayoun's employees and if he could keep them on he would do so or assist them in securing employment elsewhere. (N.T. 4/12/94, 14–16, 56–57).

8. Shortly after the May, 1991 meeting between Mr. Vignola and Mr. Tayoun and their supporters, Anthony DeFiore was laid off from his administrative assistant's position with the City of Philadelphia by then-City Council President Coleman for lack of work. (N.T. 4/12/94, 105–107).

9. In or about June, 1991, Anthony DeFiore volunteered to work in and for Joseph Vignola's campaign for Mr. Tayoun's city council seat. (N.T. 4/12/94, 87, 105–107).

10. When Joseph Vignola was sworn in as First District City Councilman on January 6, 1992, Anthony DeFiore became a member of his staff as the Director of Constituent Services at an annual salary of $29,500. (N.T. 4/12/94, 8, 19, 88, 100, 123).

11. As Mr. Vignola's Director of Constituent Services, Anthony DeFiore had no legislative or independent office policymaking responsibilities. (N.T. 4/12/94, 12–13, 53–54, 87–88).

12. There is no formal organization known as the "Tayoun democrats" or the "constituent-based democrats." Nevertheless, Mr. DeFiore considers himself to be one of a number of "constituent-based" or "oriented" members of the Philadelphia democratic party who share a philosophy that providing constituent services is of paramount importance. Mr. DeFiore considers Mr. Tayoun to likewise be a "constituent-oriented" democrat. (N.T. 4/12/94, 48–49, 53, 81–82 85, 124).

13. In contrast, Mr. DeFiore believes Mr. Vignola to be a "media-based" or oriented democrat for whom getting his message out to the public is better accomplished through the news media rather than through providing constituent services. (N.T. 4/12/94, 81). Notwithstanding this difference, Mr. DeFiore's allegiance to the constituent-based segment of the democratic party did not interfere with his ability to act as Mr. Vignola's constituent services representative. (N.T. 4/12/94, 92–93).

14. Of the approximately seven employees in Councilman Tayoun's office, Mr. Vig-

nola also hired Elsie Hartey and Alice Rogers from former Councilman Tayoun's staff to work in his office after he was elected to the First Councilmanic District seat in addition to Mr. DeFiore. (N.T. 4/12/94, 111, 154, 159, 163–165). Inasmuch as Elsie Hartey died in 1993, Alice Rogers is the only former Tayoun employee still working for Councilman Vignola. (N.T. 4/12/94, 136, 165).

15. Alice Rogers now does constituent service work for Councilman Vignola and has received several pay raises since she began working for the councilman in January, 1992. Councilman Vignola has assured Ms. Rogers that he has no intention of terminating her from her position with his office. (N.T. 4/12/94, 154, 159–160).

16. Although Anthony DeFiore's overall job performance as a provider of constituent services was good and effective and was essentially the same under both Councilmen Tayoun and Vignola, there were occasions on which Mr. DeFiore lost his temper and used rough language with constituents. There were also occasions on which Mr. DeFiore spoke disparagingly about Councilman Vignola. (N.T. 4/12/94 42–44, 55, 72; N.T. 4/13/94, 4–5, 10–11, 12–13, 16–17, 25–26, 30–31).

17. On Friday, November 13, 1992, Councilman Vignola overheard a telephone conversation which Mr. DeFiore was having with an unknown party in the office. In the course of that conversation, Mr. Vignola heard Mr. DeFiore utter the words "fucking asshole" in such a manner that he believed that Mr. DeFiore was referring to him. Although no words passed between them at that time, Mr. Vignola was further convinced that Mr. DeFiore had been referring to him by the facial expression and body language which Mr. DeFiore wore when Mr. Vignola went out of his office to confront him. (N.T. 4/12/94, 23–28).

18. After taking the weekend to consider what he had overheard Mr. DeFiore say on November 13, 1992, Mr. Vignola called Mr. DeFiore into his office at approximately 8:00 a.m. on Monday, November 16, 1992 and told him that his employment as his Director of Constituent Services was terminated immediately. In response to Mr. DeFiore's request for an explanation, Mr. Vignola did not tell or ask him about what he had overheard the preceding Friday morning, but said only that "Harvey and Marty were correct." (N.T. 4/12/94, 22–23, 27–35, 94–99).

19. Mr. Vignola did not terminate Mr. DeFiore on the basis of his prior political affiliation with James Tayoun and there is no evidence whatsoever that Mr. Vignola terminated Mr. DeFiore on the basis of his "constituent based or oriented" political philosophy. (N.T. 4/12/94, 147.)

## DISCUSSION

According to the amended complaint which he filed in this action on February 18, 1993, Mr. DeFiore contends that Councilman Vignola wrongfully and unconstitutionally discharged him from his Director of Constituent Services position on November 16, 1992. Mr. Vignola, in turn, takes the position that Mr. DeFiore was at all times a policy-making, at-will employee who was terminable at any time for any or no reason whatsoever.

▮▮▮ The law in this area is clear. While the First Amendment on its face protects neither the right of association nor the right to refrain from speech or association, the U.S. Supreme Court has declared that the right of an individual to engage in activities protected by the First Amendment—speech, assembly, petition for redress of grievances and the exercise of religion—encompasses the corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious and cultural ends. *U.S. v. Frame,* 885 F.2d 1119, 1130 (3rd Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1070 (1990), citing *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 622, 104 S.Ct. 3244, 3250, 3252, 82 L.Ed.2d 462 (1984). However, "freedom of association", while protecting the rights of citizens to engage in "expressive" or "intimate" association, does not protect every form of association. *Id.,* at 1131. As a general rule, though, the right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. *Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976) citing *Kus-*

*per v. Pontikes,* 414 U.S. 51, 56–57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973).

Applying these basic precepts, the Supreme Court has held that the discharge of public employees solely on the basis of political patronage constitutes an impermissible infringement of the First and Fourteenth Amendment rights of those employees to freely associate with the political parties and/or individuals of their own choosing. *See: Elrod,* 427 U.S. at 360, 96 S.Ct. at 2683. Likewise, conditioning continued employment, promotions, demotions, transfers and other hiring decisions on political patronage, belief and association is equally unconstitutional. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 78–79, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 515–516, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980).

■ This is not to say, however, that political association and beliefs can *never* be the basis for a hiring decision. Rather, if the government can demonstrate that it possesses an overriding interest such as would validate an encroachment on the individual employee's protected interests (e.g., preservation of the democratic process), political affiliation may be shown to be a legitimate basis upon which to premise an employment decision. *See: Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687. In other words, if it can be shown that an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency. *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. For these reasons, the courts have held that "a nonpolicymaking, nonconfidential government employee" cannot be discharged on the sole ground of his or her political beliefs but that an employee who "acts as an advisor or formulates plans for the implementation of broad goals" may be discharged upon a proper showing. *Zold v. Township of Mantua,* 935 F.2d 633, 635 (3rd Cir.1991) citing *Elrod,* 427 U.S. at 367–368, 375, 96 S.Ct. at 2686–2687, 2690; *Brown v. Trench,* 787 F.2d 167, 168 (3rd Cir.1986).

■ The task of determining whether a position is one in which political affiliation is a legitimate factor to be considered when making a personnel decision is often difficult and one which requires careful scrutiny of the specific facts of each individual case. *Stott v. Haworth,* 916 F.2d 134, 141 (4th Cir.1990); *Ness v. Marshall,* 660 F.2d 517, 520–521 (3rd Cir.1981). To demonstrate a violation of the First Amendment in this context, plaintiff bears the burden of proving (1) that he is a public employee, (2) that he was engaged in protected conduct such as maintaining an affiliation with a particular political party, and (3) that his political affiliation was a substantial and motivating factor in the state actor's personnel decision. *Albrechta v. Borough of White Haven,* 810 F.Supp. 139, 145 (M.D.Pa.1992); *Asko v. Bartle,* 762 F.Supp. 1229, 1231 (E.D.Pa.1991). Thereafter, the defendant has a substantial burden of demonstrating that political affiliation is an appropriate requirement for the effective performance of the public office in question and that it has an "overriding interest" such as would validate encroachment on the employee's First Amendment rights. *Burns v. County of Cambria, Pa.,* 971 F.2d 1015, 1022 (3rd Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Zold v. Township of Mantua, supra,* at 635.

■ In the matter at bar, we find that the plaintiff has succeeded in demonstrating only that he was a public employee when he worked as Philadelphia City Councilman Vignola's constituent services director. While we acknowledge the testimony of Mr. DeFiore himself and Matthew Cianciulli that they considered themselves, Mr. Tayoun and the late Congressman Bill Barrett to be more "constituent-oriented" than anything else and considered Mr. Vignola to be more "media-oriented" than "constituent-oriented," this "orientation" appears to reflect that perhaps philosophical differences, rather than associational differences, existed between Mr. DeFiore and Mr. Vignola. Notwithstanding these philosophical differences, however, and by Mr. DeFiore's own testimony, he was able to work just as effectively and perform the same constituent services for Councilman Vignola that he did for Councilman Tayoun. (N.T. 4/12/94, 92–93). We thus simply cannot

find from the evidence presented at trial that, at the time of his termination, Mr. DeFiore was maintaining an affiliation with a particular faction of the Philadelphia democratic party or that he was thereby engaged in constitutionally protected activity.

Moreover, even if this Court were to find that the plaintiff was engaged in constitutionally protected political activity, the record in this matter is totally devoid of any evidence that Mr. DeFiore's "constituent-oriented" philosophy played *any* role in his termination. To the contrary, the evidence in this matter reveals that the reason that Mr. Vignola fired Mr. DeFiore was because of the disparaging comment which he overheard Mr. DeFiore make on November 13, 1992.

In light of our findings that Mr. DeFiore has failed to meet his burden of proof with respect to his engagement in constitutionally protected activity and as to the nexus between that activity and his termination, there is no need to consider or evaluate whether symbiotic political affiliation and beliefs are a necessary or appropriate requirement for the effective performance of the job which the plaintiff heretofore held. So saying, we conclude that the plaintiff has failed to demonstrate that his First and/or Fourteenth Amendment rights were violated when he was terminated on November 16, 1992.

 In addition to the constitutional claims discussed above, the plaintiff's complaint also appears to raise a claim for the common law tort of wrongful discharge.[1] The law of Pennsylvania, of course, is equally clear that the at-will employment doctrine is alive and well. Indeed, it is the general rule in Pennsylvania that there is no common law cause of action against an employer for termination of an at-will employment relationship. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989) citing *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where dis-

charges of at-will employees would threaten clear mandates of public policy. *Id. See Also: Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990). Furthermore, even when an important public policy is involved, an employer may discharge an employee if he has separate, plausible and legitimate reasons for doing so. *Burkholder v. Hutchison*, 403 Pa.Super. 498, 589 A.2d 721, 723 (1991). Thus, in Pennsylvania, an employee-at-will may be terminated for any or no cause unless there is a statutory or contractual provision to the contrary. *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341 (3rd Cir.1990), *cert. denied*, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991); *Cox v. Radiology Consulting Associates, Inc.*, 658 F.Supp. 264, 265 (W.D.Pa.1987), aff'd, 835 F.2d 282 (1987). *See Also: Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022, 1025 (1991).

 Applying these legal principles to the evidence produced at trial, we again can find no evidentiary support for the plaintiff's allegation that his termination constituted a violation of public policy. Again, there is no evidence that Mr. DeFiore was terminated on the basis of his affiliation with a different and distinct faction of the democratic party from that of Mr. Vignola and we cannot and do not find that his termination constituted a violation of his constitutional rights to free political association. By plaintiff's own pleading and admissions, he did not have an employment contract and, consequently, Mr. Vignola could have terminated him at any time for any reason, good or bad, or for no reason at all.

We therefore now enter the following:

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter and the parties to this action by virtue of 28 U.S.C. § 1331 and the First and Fourteenth Amendments to the United States Constitution.

---

[1]. Paragraph 11 of Plaintiff's Amended Complaint states that "Plaintiff did not have a contract for his employment as Director of Constituent Services and, as such was an "at will" employee, able to be terminated at any time, without cause; however, the circumstances underlying the termination of plaintiff's employment fall within an exception to the rule of "at will" employment, being that the defendant acted in violation of public policy."

2. The plaintiff, Anthony DeFiore was at all times relevant, an at-will employee in the office of Philadelphia City Councilman Joseph Vignola subject to termination at any time for any or no reason at all.

3. The plaintiff has failed to prove that the defendant terminated him from his position as Director of Constituent Services on November 16, 1992 on the basis of his political philosophy or his association with James Tayoun or any other "constituent-oriented" democrat.

4. The plaintiff has failed to prove that his right to free political association as guaranteed him under the First and Fourteenth Amendments to the United States Constitution were violated by the defendant's termination of him from his Director of Constituent Services position on November 16, 1992.

5. The defendant is entitled to the entry of judgment in his favor on all counts of the plaintiff's complaint in no amount.